**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | |
|---|---|
| BARBARA KAY AND JAMES KAY, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>SUNBEAM PRODUCTS, INC., )<br>)<br>Defendant. ) | Case No. 09-4065-CV-C-NKL |

**MEMORANDUM OPINION & ORDER**

Before the Court are Sunbeam's motions for partial summary judgment concerning causation [Doc. # 88] and punitive damages [Doc. # 90].[1] For the following reasons, the Court grants in part and denies in part both motions.

I.      **Factual Background**

The following facts are taken from the parties' supported statements of uncontroverted fact. In February 2005, the Kays received an electric blanket made by Sunbeam as a warranty replacement on another blanket they had received as a gift.

The Kay electric blanket included a user's manual. Mrs. Kay testified that she did not read the manual. Mr. Kay testified that he did read it and its warnings. The manual warns

---

[1] In its response to Sunbeam's motion for summary judgment regarding causation, the Kays state that they have not filed their own motion for summary judgment, but that they are entitled to summary judgment on the issue of causation; in their conclusion, they request summary judgment as to causation. The Court does not consider the Kays' request, which does not comply with the Local Rules and Federal Rules of Civil Procedure, and falls outside the dispositive motion deadline in this case.

that the blanket should not be used with an incapacitated person. It also warns that the blanket should not be used in a mechanically adjustable bed. The manual warns against rubbing the blanket because exposing wires can lead to fire. The manual does not warn that the safety circuit in the blanket had not been proven 100% effective and that, if the circuit malfunctioned, a fire could result.

In October 2008, a fire started in Mrs. Kay's mechanically adjustable bed when the Kays were sleeping. Mr. Kay saw the fire along Mrs. Kay's left side. She had been using a Sunbeam electric blanket that night. There was a smoke detector directly above Mrs. Kay, and it sounded that night. Mrs. Kay did not suffer smoke inhalation.

Apparently several months or years before the fire, Mrs. Kay had a stroke and was left without use of the left side of her body. She was, however, capable of operating the controls on the blanket. The Kays argue that she was not incapacitated as to the use of the blanket.

There is evidence of two potential causes of the fire: the Kay electric blanket or Mrs. Kay smoking in bed. With regard to the first potential cause, one of Sunbeam's experts, Fire Chief Ed Hancock, determined that the Kay blanket was plugged in and operating at the time of the fire. An ambulance report and various hospital records indicate that the fire was caused by the blanket.

The parties present evidence about the engineering of the Kay blanket and other electric blankets. They primarily discuss two components of electric blankets: a heating element (referred to here most often as a "PTC" wire), and a safety circuit designed to shut off the blanket in the event of a malfunction of other components (referred to most often as

Circuit 100 or Circuit 602 from the 1990s and Circuit 104 from the 2000s). The Kay blanket incorporated a heating element and Circuit 104. Since May 2004, Sunbeam has sold over twenty-five million bedding products incorporating the same heating element and Circuit 104

The parties do not dispute that, absent a proper safety circuit, the heating element used in the Kay blanket can cause fires and has done so on numerous occasions. The parties agree that Circuit 104 is safer than its predecessors. Since incorporating Circuit 104, the number of consumer claims concerning fires caused by the product used by the Kays has diminished.

One of Sunbeam's experts, Richard Prins, opines that the Kay blanket represents the current state of the art technology. Though the Kays dispute the weight of this fact, in its design, manufacture, and operation, the model of blanket used by the Kays complies with Underwriters Laboratories 964, Standard for Safety for Electrically Heated Bedding. Sunbeam has used the particular heating element used in the Kay blanket in several models of blanket.

The Kays' experts, John Reagan and Ron Gronenmeyer, opine that the heating element in the Kay blanket can fail in a particular way (via a "parting arc" from an open circuit) and cause fires.

Theoretically, parting arc failures of the heating element should not cause fires if the safety circuits are properly functioning. One of the Kays' experts, Will Cronenwett, said that Circuit 104 protects against foreseeable misuses and abuses of the blankets if it functions as designed. The Kay blanket's Circuit 104 was tested in a laboratory and found to function according to its intended design; the Kays argue that this fact does not necessitate a finding

that the circuit was functioning as intended at the time of the fire. Cronenwett agrees that, if the Circuit 104 in the Kay blanket was functioning properly, he can rule out Reagan and Gronenmeyer's theory that a parting arc caused the fire. However, Cronenwett's report indicates that there have been several reported incidents of the same product used by the Kays not functioning as designed and resulting in fires.

None of the Kays' experts have performed testing on the particular blanket used by the Kays. The Kays' experts have examined bedding products containing the same heating element and Circuit 104 as that used in the Kay blanket but have not identified any particular blanket as an example of what they say could have caused the Kay fire.

As to the other potential cause of the fire, Mrs. Kay had a history of smoking in bed. Though the Kays object to the admissibility of this fact, Mrs. Kay had cigarette burns in the bedding and her pajamas. Mrs. Kay would lose cigarettes and lighters in the bedding. Mr. Kay had ordered her a special Kevlar vest to avoid her burning herself when smoking in bed. The parties dispute whether Mrs. Kay would smoke at night after she and her husband had gone to bed for the night. Though the Kays object to the admissibility of this fact, the Kay electric blanket was damaged on several occasions before the fire by cigarettes; the damage had exposed the heating element in the blanket. At the time of the fire, there were partially-burned cigarettes in the bed.

The fire department report from the Kay fire lists a cigarette as the cause of the fire. Sunbeam's expert, Hancock, narrows the cause of the fire down to smoking or the blanket; because he did not have forensic testing of the blanket, he said smoking was the most likely

cause. Hancock stated that the scope of his investigation was to determine whether a crime had been committed. The Kays object to the admissibility of this opinion in that it does not rule out one of two potential causes.

The Kays' expert, Gronenmeyer, performed testing which indicates that lit cigarettes do not cause Sunbeam electric blankets to catch fire by erupting into flame. The Kay blanket had not previously caught fire, despite the evidence of being burned by cigarettes.

The Kays note that a certified fire investigator appeared in person on behalf of Sunbeam at both a site investigation of the fire and at a laboratory examination of the Kay blanket remains. He has not been identified as a testifying expert.

The Kays are pursuing an action for negligence, strict liability, and failure to warn under Missouri law. They include a claim for punitive damages.[2]

## II.    Discussion

The parties do not dispute the general law applicable to Sunbeam's motions for summary judgment.

### A.    Causation

#### 1.    Strict Liability & Negligence

Sunbeam argues that the Kays cannot show causation as to strict liability and negligence. To establish their strict liability claim, the Kays must show that (1) the blanket was defective and dangerous (2) when put to a reasonable use (3) anticipated by Sunbeam

---

[2] The Kays originally pleaded claims for breach of warranty and violation of Missouri Merchandising Practices Act, which they have since voluntarily dismissed.

and (4) that the Kays sustained damage as a direct result of the defect. *See Haffey v. Generac Portable Prods., L.L.C.*, 171 S.W.3d 805, 809 n.2 (Mo. App. Ct. 2005). To establish their negligence claim, the Kays must make a prima facie case demonstrating that (1) Sunbeam had a duty to protect the Kays from injury, (2) the breach of that duty, and (3) resulting injury. *See Lopez v. Three Rivers Elec. Co-op., Inc.*, 26 S.W.3d 151, 155 (Mo. 2000) (en banc).

Sunbeam's first argument turns on the outcome of their *Daubert* motions. Sunbeam states that expert testimony is necessary to demonstrate causation with regard to fire investigation and electrical engineering. *See generally Presley v. Lakewood Eng'g & Mfg. Co.*, 553 F.3d 638, 647 (8th Cir. 2009) (finding no abuse of discretion in excluding fire causation expert). Referencing its motions to exclude the Kays' experts, Sunbeam argues that the Kays' experts on both topics should be excluded and, thus, the Kays are left without causation evidence.

In a separate order on this date, the Court denies for the most part Sunbeam's motions to exclude the Kays' experts. Those expert opinions indicate that the use of cigarettes can be eliminated as a cause of the fire, that a parting arc event was the cause of the fire, and that there was a safety circuit failure. While that testimony will be subject to cross examination and consideration in light of other evidence at trial, the Kays' expert testimony is sufficient to raise issues of material fact concerning whether the Kay blanket caused the fire.

**2.    Failure to Warn**

Sunbeam next argues that the Kays cannot show causation as to their failure to warn claim. In order to establish their failure to warn claims, the Kays must show that (1) Sunbeam sold the Kay blanket in the course of its business, (2) the blanket was unreasonably dangerous at the time of sale if used as reasonably anticipated without knowledge of its characteristics, (3) Sunbeam did not give adequate warning of the danger, (4) the Kays used the blanket in a reasonably anticipated manner, and (5) the Kays were damaged as a direct result of the blanket being sold without adequate warning. *See Tenbarge v. Ames Taping Tool Sys. Inc.*, 190 F.3d 862, 866 (8th Cir. 1998) (citing *Tune v. Synergy Gas Corp.*, 883 S.W.2d 10, 13 (Mo. 1994) (en banc)).

Sunbeam points to the causation element of the Kays' failure to warn case. The causation element of a failure to warn claim has two requirements: (a) the Kays must show that the blanket caused their injuries and (b) the Kays must show that they would have heeded a proper warning. *Smith v. Brown & Williamson Tobacco Corp.*, 275 S.W.3d 748, 785 (Mo. App. Ct. 2008); *Klugersherz v. American Honda Motor Co., Inc.*, 929 S.W.2d 811, 814 (Mo. App. Ct. 1996). If there is sufficient evidence that the Kays did not know of the specific dangers of the blanket that allegedly caused their injury, a rebuttable presumption will arise that they would have heeded a proper warning. *Id.*

Regarding the first element of failure to warn causation, as it did with regard to the Kays' other claims, Sunbeam argues that the Kays cannot establish that the blanket caused their injuries. For the reasons stated above, the Court finds that genuine issues of material fact exist as to the cause of the fire.

Regarding the second element of failure to warn causation, Sunbeam argues it has evidence which, as a matter of law, rebuts the presumption that they would have heeded a warning. Sunbeam points to evidence that Mrs. Kay did not read the user's manual and that Mr. Kay read but did not pay attention to the warnings. Sunbeam further states that the Kays did not heed the warnings about use with incapacitated persons, and use with a mechanical bed. Sunbeam notes that there was a warning concerning "rubbing" the blanket, which included a note that resulting exposed wires could cause a fire, and that Mr. Kay was aware of exposed wires on the blanket.

In response, the Kays do not point to evidence that they would have heeded a proper warning. The Kays argue that Mrs. Kay was not incapacitated as to use of the blanket and that the "rubbing" warning did not adequately call attention to the potential issue that caused the fire; both issues appear to raise questions of fact. However, though they argue that the mechanical bed did not cause the fire, they do not dispute that they did not pay attention to the warnings listed in the manual. They both testified that they did not pay attention to the warnings. Faced with Sunbeam's motion, the Kays submit nothing in their brief in response to this evidence indicating that they would not have heeded a proper warning – not even an affidavit saying as much. This is not enough to survive summary judgment on the issue of causation on their failure to warn claim. *See Klugersherz v. American Honda Motor Co., Inc.*, 929 S.W.2d at 816 (affirming judgment notwithstanding the verdict where there was no evidence that additional warnings would have been heeded).

**B.    Punitive Damages**

8

Sunbeam argues that the Kays cannot establish that they are entitled to punitive damages. Sunbeam states that there is not evidence that Sunbeam knew or had reason to know that its actions would result in injury (the negligence standard), or that it acted with reckless indifference to the safety of others (the strict liability standard). Factors relevant to consideration of punitive damages evidence include (1) the frequency of prior similar experiences, (2) whether the alleged injury was likely to have occurred without the negligence of one other than the defendant, (3) whether the defendant knowingly violated a statute, regulation or clear industry standard designed to prevent the alleged injury. *See Alcorn v. Union Pac. R.R. Co.* , 50 S.W.3d 226, 248 (Mo. 2001).

Sunbeam says that its compliance with the Underwriters Laboratory standards eliminates the prospect of a punitive damages award. The Kays argue that the standards do not assure safety, and, thus, compliance does not preclude an award of punitive damages. While compliance is a factor relevant to consideration under *Alcorn*, it is not dispositive and questions of fact remain concerning its impact.

Sunbeam argues that the Kays' evidence supporting punitive damages relates to Sunbeam products which are not comparable to the Kay blanket because they contain an earlier circuit rather than Circuit 104. Evidence of other products is admissible where the proponent can demonstrate that the product and accident were substantially similar to that at issue. *See Kawasaki Motors Corp. v. Ryan*, 777 S.W.2d 247, 252 (Mo. App. Ct. 1989). Trial courts have discretion in determining substantial similarity. *Alcorn*, 50 S.W.3d at 244.

Previous incidents relevant to punitive damages need only be sufficient to call a defendant's attention to a dangerous condition and lead it to take further precautions. *Id.*

In arguing that prior products are not comparable, Sunbeam points to apparently conflicting statements by Cronenwett about the extent to which the circuits are the same. The Kays respond that the products to which they wish to cite regarding punitive damages are substantially similar to the Kay blanket. They state that the heating element in Sunbeam's blankets has remained the same since 1983 and that Sunbeam has found that, in some of those blankets, the safety circuit did not prevent fires. The Kays argue that the patent documents for the safety circuits indicate Sunbeam's awareness that the heating element caused fires such that safety circuits were necessary. They point to evidence that all circuits have been involved in customer complaints and fire claims. They note that Prins is aware of Circuit 104 blankets involved in fires, and that Circuit 104 can fail in certain circumstances. Finally, they point to Cronenwett's conclusion that the Circuit 100 and Circuit 104 blankets are identical. There is a question of fact concerning whether Circuit 100 and Circuit 104 products are substantially similar, such that summary judgment on that issue is not appropriate. *Cf. Harrington v. Sunbeam Prods. Inc.*, No. 4:07-CV-1957 CAS, 2009 WL 701833 (E.D. Mo. March 13, 2009) (denying summary judgment regarding punitive damages and finding genuine issues of material fact concerning whether the heating element that caused fires in Circuit 100 blankets remains the same in Circuit 104 blankets).

The Kays do not, however, offer evidence that the Circuit 602 products are substantially similar to the Circuit 104 Kay blanket. The Kays actually emphasize the

unusually high number of fire claims on Circuit 602 products, and the short-lived use of Circuit 602. Sunbeam points to evidence that Circuit 602 is significantly different from Circuit 104. Therefore, the evidence of Circuit 602 is inadmissible and the Court will not consider that evidence. Nonetheless, even without consideration of Circuit 602, there is sufficient evidence to preclude summary judgment on the Kay's claim for punitive damages.

Sunbeam argues that events only qualify as substantially similar for purposes of punitive damages if those events can be shown to involve heating elements that failed based on a parting arc theory. However, the Kays' theory of punitive damages relates to Sunbeam's alleged knowledge that its product was unsafe because both the heating element and the safety circuit could fail, starting fires. Incidents relating to circuits failing after heating elements failed may have alerted Sunbeam to a need to take further precautions, such that they are substantially similar for purposes of punitive damages. Therefore, for purposes of Defendant's motion for summary judgment on punitive damages, the Court will consider the Kays' evidence concerning Circuit 100 and Circuit 104 failure.

Finally, citing *State Farm Mutual Auto Insurance Co. v. Campbell*, 538 U.S. 408, 422 (2003), Sunbeam makes a passing argument that claims about conduct by Sunbeam which occurred outside Missouri may not be considered with respect to punitive damages. However, as *State Farm* noted, "Lawful out-of-state conduct may be probative when it demonstrates the deliberateness and culpability of the defendant's action in the State where it is tortious, but that conduct must have a nexus to the specific harm suffered by the

plaintiff." *Id.* at 422. The Court will not limit the Kays to introducing evidence tied to the state of Missouri.

Given the evidence concerning the similarity of Circuit 100 and Circuit 104 product failures, and the evidence that such products are substantially similar, there remain questions of fact concerning whether the Kays can establish that they are entitled to a punitive damage award. Sunbeam has not met its burden to show it is entitled to judgment on this issue.

## III.    Conclusion

Accordingly, it is hereby ORDERED that Sunbeam's motion for partial summary judgment concerning causation [Doc. # 88] is granted as to the Kays' failure to warn claim and denied in all other respects; Sunbeam's motion for partial summary judgment concerning punitive damages [Doc. # 90] is denied.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  May 27, 2010
Jefferson City, Missouri