# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| BARBARA KAY AND JAMES KAY, | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 09-4065-CV-C-NKL |
| SUNBEAM PRODUCTS, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION & ORDER

Before the Court are Sunbeam's motions to exclude the testimony and opinions of the Kays' experts Ronald Gronenmeyer [Doc. # 76], William Cronenwett [Doc. # 78], and John Reagan [Doc. # 80]. For the following reasons, the motions are denied.

Under Rule 702 of the Federal Rules of Civil Procedure, the Court considers (1) whether the expert testimony is relevant in that it will be useful to the trier of fact, (2) whether the expert is qualified to assist the finder of fact, and (3) whether the proposed evidence is reliable or trustworthy. As to trustworthiness, the Court looks to whether the evidence is (a) based upon sufficient facts or data, (b) the product of reliable principles and methods, and (c) the witness has applied those principles and methods reliably to the facts. *See Lauzon v. Senco Prods., Inc.,* 270 F.3d 681, 686 (8th Cir. 2001). These considerations are made with an eye toward the factors set out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993): whether a theory or technique can or has been tested; whether it has been subjected to peer review and publication; the known or potential rate of error; and

whether the theory is generally accepted. *Id.* at 686-87. The parties indicate that ruling on the record is appropriate and do not request a hearing.

The Court has considered the record and arguments of the parties. The Court has also reviewed the relevant law and decisions ruling on Sunbeam's motions to exclude these same experts in other cases, including: *Quist v. Sunbeam Products, Inc.*, No. 08-5261 (DWF/AJB), 2010 WL 1665254 (D. Minn. April 22, 2010) (regarding Cronenwett); and *Harrington v. Sunbeam Prods., Inc.*, No. 4:07-CV-1957 CAS, 2009 WL 701994 (E.D. Mo. March 23, 2009) (regarding Cronenwett, Reagan and Gronenmeyer). The Court recognizes that the reliability of these experts' opinions in other cases is not dispositive of whether they would assist the trier of fact here.

### A. Gronenmeyer

As to Gronenmeyer, Sunbeam does not dispute his qualifications as a fire investigator. It takes issue with his opinions that (1) the careless use of smoking materials can be eliminated as a cause of the Kay fire and (2) that an electrical parting arc was the cause of the Kay fire. Sunbeam says that Gronenmeyer did not follow the methodology set out in the National Fire Protection Association publication 921 Guide to Fire and Explosion Investigation ("NFPA 921"), which requires that hypothesis of fire origin be carefully examined against empirical data obtained from the fire scene analysis and appropriate testing.

As to Gronenmeyer's opinion that smoking materials did not cause the Kay fire, Sunbeam argues that it is implausible because another expert disagrees, there is evidence to the contrary, and Gronenmeyer's opinion is unequivocal. Sunbeam takes issue with

Gronenmeyer not testing the specific Kay blanket. The Kays argue that Gronenmeyer observed fire scene photos, conducted a burn test of three Sunbeam electric blankets in which cigarettes did not ignite them, and inspected and partially reconstructed the fire site at which time Mr. Kay and Mrs. Kay's sister were interviewed and the smoke detectors removed. The Kays argue that Gronenmeyer did comply with NFPA 921 and generally accepted fire science methodology. The Kays point to evidence supporting Gronenmeyer's opinion, including that the fire started on Mrs. Kay's left side, that the smoke detector was working, that a smoking material fire would have smoldered and caused inhalation injury, that the smoke pattern was consistent with an electrical event starting the fire, and that certain wires had melted consistent with an electrical event.

As to the opinion that an electrical event started the fire, Sunbeam argues that it is unreliable. Sunbeam says that Gronenmeyer's opinion is premised on a melted heating element in the Kay blanket having been caused by an electrical event, but that there is no way to determine whether melting of the heating element in the Kay blanket was caused by a parting arc as opposed to simply the heat of the fire. However, Gronenmeyer presented testimony indicating that, having personally observed wires melted from electrical events as opposed to heat countless times in the field, he can differentiate between the different types of melting; he teaches fire investigation courses which include instruction on how to recognize the difference. The Kays point to NFPA 921's descriptions of the differences between electrical as opposed to heat melting.

Further, Sunbeam says that Gronenmeyer does not reliably establish that an electrical event occurred for a sufficient length of time to ignite the heating element. The Kays, however, point to evidence – in Sunbeam's own documents – that the heating element used in the Kay blanket has been known to fail and cause electrical arcing leading to fire.

Next, Sunbeam says that no facts establish that the safety circuit in the Kay blanket, which functioned in laboratory testing, failed at the time of the Kay fire. Gronenmeyer has not tested the circuit from the Kay blanket. The Kays point to evidence, from Sunbeam's consultant and expert, that the circuit at issue may sometimes not detect localized electrical issues in a blanket. They also point to evidence that a circuit may fail but still work in laboratory testing.

The Court finds that the issues Sunbeam takes with Gronenmeyer's opinions go to the weight of those opinions rather than their reliability. Gronenmeyer is a qualified fire investigator. In forming his opinions, he observed the scene and witness interviews as well as the Kay blanket; he investigated possible causes and reconstructed the site and he performed testing. Gronenmeyer's opinions are sufficiently reliable to assist the trier of fact.

**B.     Reagan**

As with Gronenmeyer, Sunbeam does not dispute his qualifications as an electrical engineer. Sunbeam moves to exclude Reagan's opinion and testimony that an electrical event in the Kay blanket was the probable ignition source of the Kay fire and that the safety circuit in the blanket failed. Sunbeam says the conclusion was not reached through the application of appropriate methodology, subject to testing or peer review, or not supported

4

within the scientific community. Just like it did with Gronenmeyer, Sunbeam argues that there is no way to tell between wires melted by an electrical event rather than a heat event, that Reagan cannot establish that an electrical event occurred long enough to ignite a fire, and that its experts' testing contradicts Reagan in that their laboratory testing showed that the safety circuit in the Kay blanket was functioning.

The Kays argue that Reagan followed NFPA 921 in examining the electrical conditions at the Kay home to rule out other appliances as potential sources of the fire. He also examined the remains of the Kay blanket at his engineering facility. The Kays argue that Reagan, like Gronenmeyer, is able to distinguish between heating elements melted by electrical events as opposed to heat of fire. The Kays argue as to the circuit failure that, while Reagan has not done any independent testing of the circuit, he is aware of Cronenwett's testing which indicates that the safety circuit used in the Kay blanket can fail and allow a fire to ignite. They say the time it takes to ignite is irrelevant where electrical events have been shown to ignite fires where safety circuits fail. The Kays point to other evidence that the fire started with the throw, including Gronenmeyer's ruling out of smoking materials as the source. The Kays note that Reagan has submitted his opinions in this matter for review by his peers, including other electrical engineers.

Using his knowledge of electrical engineering, Reagan considered the fire scene and physically inspected the blanket. He has reviewed and analyzed information from other experts in the case, including Sunbeam's. Again, Sunbeam's issues with Reagan's opinions

5

go to their weight more than their reliability. The Court finds that Reagan's opinions are sufficiently reliable to assist the trier of fact.

### C. Cronenwett

Sunbeam does not dispute the qualifications of Cronenwett, an electrical engineer and Ph.D. Cronenwett opines that, if the safety circuit on the Kay blanket failed, an electrical event in the blanket's heating element ignited the Kay fire. His report indicates that he is not a general fire origin expert, and opines only as to the heating element in the blanket.

First, Sunbeam argues that Cronenwett's opinion about the heating element failure is unreliable because (1) he did not see the Kay blanket, (2) he has not seen evidence indicating the blanket was turned on at the time of the fire, and (3) he acknowledged that, if the safety circuit was functioning as designed, it would have prevented the fire and Sunbeam's laboratory testing showed the Kay blanket's circuit to be functioning. The Kays respond that Cronenwett is a qualified electrical engineering expert with substantial knowledge concerning Sunbeam blankets, their electrical design and their known electrical failures. He has inspected numerous other Sunbeam blankets containing the same heating element as the Kay blanket, which is known to be a fire risk. The Kays say that Cronenwett has witnessed and can recreate events where the heating element fails and the safety circuit does not detect that failure, and that Sunbeam's laboratory testing of the Kay blanket does not rule out its safety circuit failure at the time of the fire. The Kays intend to use Cronenwett to explain the element's design, function, and potential failure.

Next, Sunbeam argues that Cronenwett's testimony about various potential electrical engineering causes for fires in Sunbeam blankets is speculative and misleading. It says that, because Reagan and Gronenmeyer testify to a particular electrical failure at a particular place on the Kay blanket, Cronenwett must not be allowed to testify concerning other potential failures of the blanket. Cronenwett agrees that the evidence does not show that the Kay blanket failed in any of these other ways. Sunbeam does not appear to take issue with Cronenwett's scientific opinion about other potential causes, but, rather, disagrees with its relevance. As the Court indicated in its Order on summary judgment, to the extent evidence shows that there were substantially similar events which would have put Sunbeam on notice of a defect in its product, it is admissible as to punitive damages.

In addition, Sunbeam says that Cronenwett should not be allowed to testify about other products containing the heating element that the Kays' experts say caused the fire, apparently again arguing relevance. The Kays have shown that Cronenwett is qualified to testify as to whether such products are substantially similar to the Kay blanket and to the engineering and potential failures of such other products. As discussed in the Court's Order on summary judgment, this testimony may be relevant to punitive damages if those other products are substantially similar to the Kay blanket.

Finally, Sunbeam argues that Cronenwett's opinion relies on Gronenmeyer's and Reagan's and is, therefore, unreliable. As the Court finds Gronenmeyer and Reagan's opinions sufficiently reliable, it will not exclude Cronenwett on this basis.

7

Cronenwett's opinions are based on his extensive knowledge of electrical engineering, his examination of numerous Sunbeam blankets, and his understanding of the engineering of such blankets, including the Kay blanket. He is qualified to testify about the topics for which the Kays plan to offer his opinions. Sunbeam's arguments go more to the weight than the reliability of Cronenwett's opinions. His testimony is sufficiently reliable to assist the trier of fact.

Accordingly, it is hereby ORDERED that Sunbeam's motions to exclude expert opinion and testimony [Docs. ## 76, 78, 80] are DENIED.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: May 27, 2010<br>
Jefferson City, Missouri